AUTOMATIC MERCHANDISING COMPANY, Appellee,

*v.*

Z. D. ATKINS, COMMISSIONER OF FINANCE AND TAXATION,
STATE OF TENNESSEE, Appellant.

(*Nashville,* December Term, 1958.)

Opinion filed September 3, 1959.

548

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, MILTON P. RICE, Assistant Attorney General, for appellant.

TOM MITCHELL, JR., BURCH, PORTER, JOHNSON & BROWN, Memphis, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

By reason of the State's demand, Automatic Merchandising Company paid under protest a certain gross receipts privilege tax; then sued the Commissioner for recovery thereof on the insistence that it did not owe the tax. The Chancellor allowed the recovery, and the State has appealed.

The tax in question is that levied by 67-4203, Item 65 (c) T.C.A. for the privilege of engaging in the merchandise vending machine business. That tax is payable on August 1 for the fiscal year beginning the preceding July 1.—67-4317 T.C.A. At the option of the taxpayer, it may be paid at a fixed time "on a quarterly installment basis".—67-4318 T.C.A. The particular tax in dispute here is that which was allegedly owed by Chickasaw Canteen Company of Memphis for the last two quarters of the 1956-1957 fiscal year. It paid on October 20, 1956 the second quarterly installment due November 1. On October 26, it transferred its business as a going concern, together with the intangible and tangible personal property assets thereof, to Automatic Canteen Company of America with headquarters in Chicago.

The Chicago concern operated without change the business so transferred to it until November 8 when it "effected" a transfer thereof to complainant, Automatic Merchandising Company of Memphis. This concern then took over the operation of the business, though the transfer was not formally completed until December.

In the course of time, the State demanded payment by Automatic Merchandising Company of Memphis (sometimes referred to herein as Automatic of Memphis) of the last two quarterly installments which had been left unpaid by Chickasaw. This demand was based on Title 67-4319 T.C.A. providing that when a business such as this is transferred during the year in which such quarterly payments are being made, "the transferee shall become liable for any quarterly installments * * * that remain unpaid at the time of such transfer". Automatic of Memphis did operate the business during these two quarters.

Automatic of Memphis, prior to, and after, its acquisition of the Chickasaw business, operated a similar business in Shelby County, and paid the privilege tax levied for the exercise of this business for the fiscal year July 1, 1956-June 30, 1957. Therefore, in response to the State's demand that it pay the unpaid installments left unpaid by Chickasaw, it denied liability on the ground that the very code section upon which the State sought to justify its demand, to wit, 67-4319, contained the further proviso, to wit:

"* * * provided, however, that the transferee shall not be liable for any further gross receipts taxes for the year in which the transfer is made. It is hereby declared to be the legislative intent that only one (1)

gross receipt tax be paid on account of the operation of a business during any one (1) year.''

The Chancellor, in sustaining that insistence, said:

''Since the purchaser in this case already held a privilege to engage in such business, it will not be required to pay such installments, it having already paid its gross receipts privilege tax to engage in the merchandise vending machine business during the period of time in question.

''To construe T.C.A. 67-4319 as insisted by defendant would require complainant to pay two gross receipts privilege taxes for engaging in the same business during the same year, which is contrary to the expressed 'legislative intent'.''

This decision being conclusive of the case, the Chancellor did not express any opinion upon two other insistences made by Automatic of Memphis, to wit:

[1]. That the installments for the last two quarters were not owed by Chickasaw because when this tax is proratable by quarters it is, so Automatic of Memphis says, ''payable only by a business which exercises the tax privilege during at least some part of a given quarter''. As aforesaid, Chickasaw did not exercise the privilege during the third and fourth quarters of that fiscal year; that not being owed by Chickasaw, it could not be owed by Automatic of Memphis; and

[2]. That under the facts of this case Automatic of Memphis is not a transferee of Chickasaw's business within the meaning of Title 67-4319 T.C.A.

The same three insistences are asserted here by Automatic of Memphis and denied by the State.

As to the insistence that the tax is a quarterly tax rather than an annual one, it is necessary to turn first to Code Section 67-4203, Item 65(c) levying the tax for exercising this privilege. That code section names an amount which shall be paid "per annum". Each time it refers to the time element, it uses the expression "per annum".

The provision with reference to payment on a quarterly basis is found in Section 67-4318 T.C.A. That section first provides that the tax shall be paid on or before August 1. Then there follows a proviso that any person subject to the tax

"shall have the option of paying his tax on a quarterly installment basis by paying one-fourth (¼) of the tax due on the first day of August, and an additional one-fourth (¼) of the tax that may be due on each of the first days of November, February and May; provided further, that any person so exercising this option shall be required to pay interest at the rate of six per cent (6%) per annum on any payment made after the first day of August under the foregoing provisions."

The foregoing code provisions negative the suggestion that the tax is a quarterly one rather than an annual tax. It is hardly compatible with the quarterly tax theory that the taxpayer is required to pay 6% interest on the installments paid after the first day of August; or with that expression in the statute that "one-fourth (¼) of the tax due on the first day of August", etc.; or with the proviso that the tax may be paid in "installments", one installment due each quarter with interest.

■ The Court's conclusion is that the tax is an annual tax and that Chickasaw did owe the State for the two installments which were unpaid at the time it transferred its business on October 26, 1956.

■ Consideration of the insistence of Automatic of Memphis that it is not a transferee of Chickasaw within the meaning of Code Section 67-4319 requires an examination of the history of this transaction.

The franchise held by Chickasaw for the territory in which it operated was exclusive. Automatic of Memphis knew that. Nevertheless, it began "dickering with" the lessor of the franchise, to wit Automatic Canteen Company of Chicago, "to become their distributor here in Memphis" about a year or more before it acquired Chickasaw's business.

Saunders, President of Automatic of Memphis, testified that Chickasaw had a "bad name" and, to use his language, "that is how we broached the subject; it is logical that they would want somebody else to operate the business who would do a better job".

The transfer by Chickasaw to Automatic Canteen Company of Chicago was on October 26, 1956. Its vice-president came down from Chicago to confer with Automatic of Memphis about the business on September 18, October 7, and October 26, the latter being the same day of the transfer by Chickasaw to Automatic of Chicago. It is apparent that Automatic of Chicago was carrying on its negotiations with the other two concerns simultaneously, thus suggesting that the outcome of one was dependent upon the outcome of the other.

Mr. Mundell, manager of the tax department of Automatic of Chicago, testified that when the transfer was

made to it by Chickasaw on October 26 it sent to Memphis one of its employees ''to conduct the business pending completion of negotiations for the transfer of the assets of the business of Chickasaw Canteen Company to Automatic Merchandising Company'', and that these negotiations were completed about November 8 ''and the transfer effected''; and that Automatic of Chicago never intended to operate the business upon a permanent basis.

When on October 26 Automatic of Chicago took over Chickasaw's business and operated the same until negotiations with Automatic of Memphis were completed on November 8, it carried a special bank account and, upon completion of the negotiations with Automatic of Memphis, it paid over to the latter the excess of the receipts of the business over disbursements for the period October 26-November 8. This ''excess'' amounted to some $5,000.

When Chickasaw transferred to Automatic of Chicago, the latter, as part of the consideration paid, refunded to Chickasaw the unearned portion of the taxes which Chickasaw had paid for the second quarter. When negotiations with Automatic of Memphis were completed a few days later, the latter was charged with the amount of the refund of said tax, and was aware of that fact. The purchase price and assets, tangible and intangible, transferred by Automatic of Chicago to Automatic of Memphis were identical, and for the same consideration, with those transferred to Automatic of Chicago by Chickasaw with the exception of certain milk and pastry vending machines, title to which was retained by Automatic of Chicago but leased to Automatic of Memphis.

It was transferred to Automatic of Memphis as the same going concern which Chickasaw had transferred to Automatic of Chicago a few days before.

The foregoing evidence quite strongly and conclusively, the Court thinks, supports the State's contention that Automatic of Chicago was, for all practical purposes, only a conduit through which Automatic of Memphis procured the transfer to it of the business of Chickasaw. At any rate, this Court's opinion is that Automatic Merchandising Company of Memphis is a transferee of Chickasaw's business within the meaning of Title 67-4319 T.C.A. The evidence being what it is, a contrary conclusion would defeat the intentions of the Legislature in the enactment of this section as to the obligations of a transferee.

The final question, then, is whether Automatic Merchandising Company of Memphis is relieved of liability as transferee of the Chickasaw for the payment, as such transferee, of the unpaid installments of this tax because, as held by the Chancellor, it had "already paid its gross receipts privilege tax to engage in the merchandise vending machine business during the period of time in question"; hence, not liable under "the expressed legislative intent" (to use the Chancellor's language) of Code Section 67-4319. The exact language of that section is this:

"67-4319. Liability of transferee of business. — Whenever the ownership of a business subject to the gross receipts tax, the owner of which business has elected to pay the tax in quarterly installments as provided in sec. 67-4318, is transferred during the year in which such quarterly payments are being made, the transferee shall become liable for any quarterly install-

ments or installment, together with penalties, if any have accrued, and interest, that remain unpaid at the time of such transfer; provided, however, that the transferee shall not be liable for any further gross receipts taxes for the year in which the transfer is made. It is hereby declared to be the legislative intent that only one (1) gross receipt tax be paid on account of the operation of a business during any one (1) year. (Acts 1953, Ch. 185, sec. 1.)''

This code section is dealing exclusively with unpaid installments of a gross receipts tax owed when the tax for the operation of the business is being paid on a quarterly basis, and when the owner transfers that business during the tax year. Since it must be inferred that the Legislature had no intention of inflicting upon· the operator of the business a double taxation, the question which logically arises is as to why the Legislature wrote into this statute a provision declaring its intent to avoid double taxation on account of the operation of that business during that taxable year.

In seeking the answer to this question, it is at once discovered that this code section is Chapter 185 of the Acts of 1953. It is permissible in seeking to construe an ambiguity in a code section to look to the original act which that code section carries for such aid as the original act might give. *Holston River Electric Company v. Hydro Electric Corporation*, 166 Tenn. 662, 665, 64 S.W. 2d 509. So, turning to Chapter 185 of the Public Acts of 1953 it is learned that its only provision is to amend Section 1248.5 of the 1950 Supplement to the Code ''so as to add thereto'' that which is carried in Code Section 67-4319. (The 1953 Act.)

The last paragraph of Section 1248.5 of the 1950 Code Supplement deals with the payment of the tax in question by one who commences this business at some time after the beginning of a fiscal year. And the provision of this last paragraph is that such person who commences the exercise of the privilege after the beginning of the fiscal year shall, for the remainder of that year, pay the tax on the 10th day of each following month in accordance with the formula spelled out in this last paragraph of Section 1248.5. The effect was that one venturing upon that enterprise either as a new business or as a transferee of a going concern and so entering after the commencement of the fiscal year was required to pay for the remainder of that fiscal year on a monthly basis, and, if a transferee, must make such monthly payments though the transferor had already paid the tax for that year.

Then came the 1953 amendment providing that such transferee shall be liable for the unpaid quarterly installments of the annual tax owed by the transferor of the business. Therefore, except for the proviso which the 1953 Act adds, there were two sections applicable to the transferee. One of these was that he should pay for the remainder of the year on a monthly basis. Section 1248.5, 1950 Code Supplement, now 67-4320 T.C.A. The other was that such transferee shall pay the unpaid quarterly installments owed by the transferor of the business. Title 67-4319 T.C.A.

Quite naturally, in such a statutory plight of the matter, there would have occurred to the legislative mind the fact that this transferee, because of the existence of the two statutes would be required to pay on a monthly basis

558

for the remainder of the year as provided by the 1950 Code Supplement (67-4320 T.C.A.), and, in addition, the unpaid quarterly installments as directed by the 1953 statute which was then in the process of being enacted. Now Title 67-4319 T.C.A.

■ It is reasonable, therefore, to conclude that when the Legislature added the proviso "that the transferee shall not be liable for any further gross receipts taxes for the year" etc. with a declaration that the legislative intent was to require the payment of one only gross receipt tax "on account of the operation of a business during any one year", it had in mind an intent to make it clear that the transferee, who was then, for the first time, being required to pay the remaining unpaid quarterly installments, should not be required to also pay on a monthly basis for the remainder of the year, as was required before the enactment of the 1953 amendment.

■ Since this is a reasonable construction of Code Section 67-4319 in the light of the relevant statutory history, considered in context, it follows that it is the duty of the Court to so construe it because: "There must be an affirmative showing by the taxpayer of his right to the exemption, because taxation is the rule, and exemption from taxation is the exception." *Nashville Tobacco Works v. City of Nashville*, 149 Tenn. 551, 558-559, 260 S.W. 449, 451. There are numerous cases to this effect. The rule is succinctly stated in *Williams v. Cravens*, 31 Tenn.App. 246, 250, 214 S.W.2d 57, 59, as follows: "* * * any statute which limits the right of the State to collect its taxes must be strictly construed in its favor".

■ There is another well established rule which strongly supports the construction above placed upon

Code Section 67-4319. That rule is,—"where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class". *State v. Grosvenor,* 149 Tenn. 158, 163, 258 S.W. 140, 141. Or, as expressed in *State ex rel. v. Pollard,* 124 Tenn. 127, 137-138, 136 S.W. 427, 430, such general words "are to be deemed to have been used, not in the broad sense which they might bear in standing alone, but as related to the words of more definite and particular meaning with which they are associated".

When the Legislature was enacting Chapter 185 of the Public Acts of 1953, it being Code Section 67-4319, it had in mind, as is entirely clear, a particular class of persons, to wit,—transferees after the beginning of the fiscal year of a going business for the operation of which the transferor was paying the privilege tax in quarterly installments and had not paid all of such installments at the time of the transfer.

There is nothing on the face of this statute, or in the context thereof, which gives the slightest indication that the Legislature was thinking of persons who had paid such a tax for the year at the beginning of the fiscal year for the operation of a similar, but different, business. Hence, it was error, we think, for the Chancellor to broaden the provision by reading such persons into the proviso. On the other hand, the rule just stated requires the Court to limit its construction to the class which the statute clearly reflects the Legislature had in mind, and with which class it was treating, at the time of the enactment. The Chancellor's error, as we view it, was in

giving too broad an effect to the exemption as to the class falling therein.

Too, when the Chancellor held that the transferee was not liable to pay this tax because he had "already held a privilege to engage in such business" he overlooked, we think, the opening sentence of 67-4319 T.C.A. reading as follows: "Whenever the ownership of *a business subject to the gross receipts tax, the owner of which business* has elected to pay the tax * * *" etc. (Emphasis supplied.)

For each of the reasons stated, it follows, as this Court views the question, that payment by Automatic Merchandising Company of the annual tax at the beginning of the 1956 fiscal year for the operation of a similar, but different, business did not exempt it from the payment of the unpaid quarterly installments of another like business which it, as transferee, procured as a going concern in the middle of the tax year. Hence, it owed the tax which the State demanded.

The decree of the Chancellor holding to the contrary is reversed, and the bill dismissed with costs adjudged against Automatic Merchandising Company.