# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY SESSION, 1997

FILED

September 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9612-CC-00440 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | HENDERSON COUNTY |
| VS. | ) | |
| | ) | HON. FRANKLIN MURCHISON |
| BOBBY G. WATKINS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Impersonation of Licensed |
| | ) | Professional) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF HENDERSON COUNTY

FOR THE APPELLANT:

JAMES E. BROCKMAN
203 Tennessee Avenue South
P.O. Box 25
Parsons, TN 38363

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KENNETH W. RUCKER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JERRY WOODALL
District Attorney General

DONALD ALLEN
Assistant District Attorney General
P.O. Box 2825
Jackson, TN 38302

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Bobby G. Watkins, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Henderson County jury of one count of impersonation of a licensed professional, a Class E felony, and one count of violation of the private investigators licensing act, a Class A misdemeanor.[1] He was sentenced to one year for the impersonation of a licensed professional conviction and eleven months and twenty-nine days for the violation of the private investigator licensing act, to be served concurrently. Both sentences were suspended and the Defendant was placed on supervised probation conditioned upon his paying all fines and court costs within ten months. The Defendant appeals his convictions and raises two issues: (1) That the evidence was insufficient to support his convictions; and (2) that the trial court's instructing the jury with a version of Tennessee Code Annotated section 62-26-202 that was amended after the crimes were committed was, in effect, a violation of the prohibition against ex post facto laws. After a careful review of the record in this case, we affirm the judgment of the trial court.

On February 2, 1993, George Plunk and James Faught were planning to go to a pawn shop in Lexington to shop for a police scanner. They met with the Defendant Watkins at a mutual friend's house. Because they were going to Lexington, Watkins asked them to check out information on five people just as a favor and not for employment or compensation. Watkins handed each of them "courtesy cards" with their names added. He told them that when they were

---

[1] Tenn. Code Ann. §§ 39-16-302; 62-26-204,-230.

checking for information if anyone gave them trouble, to show the cards and say they were doing a favor for Watkins.

Plunk and Faught presented themselves at the Henderson County Sheriff's office. Plunk talked with a jailer, who referred the two men to Gary Powers, Chief Investigator for the Sheriff's Department. Powers met them in the lobby and Plunk stated that they were looking for information on two people regarding a case they were working. They were not specific about the type of information they were seeking. Powers told the jailer to pull the file on the people in question and wait for further instructions. Plunk stated that he and Faught were private investigators. Both of the men showed the identification cards given to them by Watkins. Powers examined Plunk's card and determined that it looked suspicious.

The identification card had several items on it: "The State of Tennessee," "Office of the B & J Detective Agency." There was a six-pointed star with the state seal in the background with the following text:

> By the virtue of the authority vested in me as a private investigator pursuant to the law of Tennessee, I have this day commissioned GEORGE PLANK (sic) as an investigator for the B & J Detective Agency to execute any and all cases that may come into (unreadable) hands, and to cooperate and assist City, County and State Police in anyway (sic) they may request. To also report any criminal violations of the law against the State of Tennessee.

The card was signed by Bob Watkins, B & J Detective Agency.

-3-

Powers took Plunk's identification card and showed it to Robert Pollard, who worked with the Fire Marshall's office and with the Tennessee Commerce and Insurance Department who also happened to be in his Henderson County field office that day. Pollard asked for Faught's card as well. Faught never made any statements while at the Sheriff's Department. Faught thought he was just going along and never considered himself acting as a private investigator. Pollard determined that the card did not look like a licensed private investigator's identification card. He noted that the card lacked the photograph that normally appeared on an official card. Pollard called the Private Investigation Commission in Nashville. Donna Hancock, the administrative director of the commission, informed him that neither Plunk nor Faught were licensed private investigators.

Powers and Pollard then issued citations to both men and took their photographs. Pollard requested that Ms. Hancock send a voided official identification card issued by the State of Tennessee. The official card contained a state seal and a place to insert the investigator's photograph. This confirmed that Plunk and Faught's cards were indeed not official or valid. Records also confirmed that the B & J Detective Agency was licensed by the state. Hancock testified at trial that one cannot act as a private investigator in Tennessee without being licensed.

At Pollard's request, Watkins met with him regarding the cards. Watkins asserted that he did not see a problem with issuing the identification cards and that he had authority to issue cards because the sheriff's departments do it all the time. Watkins did not deny that he issued the cards to Plunk and Faught. Pollard issued a citation to Watkins.

-4-

Plunk and Faught were indicted on June 7, 1993 for violation of the private investigators licensing act and impersonation of a licensed professional. Watkins was indicted for the same offenses based on criminal responsibility for the conduct of another and for transfer or attempt to transfer a private investigator's license.[2] All three were tried jointly by a jury on February 9 and 10, 1995. Faught was granted a Motion for Acquittal after the State presented its proof. The trial court also dismissed Watkin's indictment for transferring a private investigator's license. Plunk was convicted on both charges which were affirmed by this Court.[3] The Defendant Watkins was convicted on both of the remaining counts.

In his first issue on appeal, the Defendant argues that the evidence was insufficient to support the verdicts of guilt. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

---

[2] Tenn. Code Ann. §§ 39-11-402; 62-26-210.

[3] State v. George Plunk, C.C.A. No. 02C01-9603-CC-00096, Henderson County (Tenn. Crim. App., Jackson, Mar. 18, 1997).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Plunk testified that the Defendant asked him to check on some information about people as a favor. There was no intent to employ Plunk as a private investigator. Plunk's impression was that the card he was issued was a "courtesy card" and nothing more. Plunk maintains that he never said he was a private investigator. He also maintains that Robert Pollard never heard either Plunk or Faught claim to be a private investigator and that the cards clearly did not appear to be official identification cards.

However, there is evidence in the record that the cards issued to Plunk and Faught were designed to look somewhat like official cards. The text of the card "vested" authority to serve as a private investigator from Bob Watkins, who signed the card. Both Plunk and Faught testified that the Defendant gave them the cards. There is also evidence that the Defendant directed the men to obtain information and show the cards and say there were working for him. Finally, Plunk presented the card at the Sheriff's Department and stated he was a private investigator.

Criminal responsibility for the conduct of another requires that "acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). There is ample evidence in the record that the Defendant not only aided but directed his codefendants Plunk and Faught to appear as if they were licensed private investigators. He created his own identification cards vesting authority to Plunk and Faught as private investigators and he asked them to go to the Sheriff's Department and use the cards to obtain information.

The statute prohibiting the impersonation of a licensed professional provides in pertinent part that it is unlawful for "any person who is not licensed to do so, to practice or pretend to be licensed to practice a profession for which a license certifying the qualifications of such license to practice the profession is required." Tenn. Code Ann. § 39-16-302(a). Here, there is more than sufficient evidence to prove that Plunk stated he was a private investigator, showed a fake identification card, that private investigators must be licensed in Tennessee, and that he was not licensed as a private investigator.

A conviction for violation of the private investigator licensing act specifies that "it is unlawful for any person to act as an investigations company or private investigator, without first having obtained a license from the commissioner." Tenn. Code Ann. § 62-26-204(a). A private investigator is "anyone who engages in the business or accepts employment to obtain or furnish information with reference to (A) Crimes or wrongs done or threatened against . . . any . . . state" or one who seeks information regarding the "identity, habits, conduct, business,

occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputations or character of any person." Tenn. Code Ann. § 62-26-202(5)(A),(B), (9) (Supp. 1996).[4] Again, we find that there is sufficient proof in the record to support the conviction. Although Plunk and Faught deny accepting employment for the investigative work, they did "engage in the business" of seeking information about certain individuals' possible criminal records or other general information about them.

We can only conclude that there was more than sufficient proof in the record to support the conviction for impersonation of a licensed professional and a violation of the private investigator licensing requirements. This issue is without merit.

We now turn to the Defendant's second issue on appeal. He challenges the trial court's use in a jury instruction of amended sections of the private investigator law regarding the definition of "private investigator." The crimes for which he was convicted occurred on February 2, 1993. The code provisions in effect governing private investigator licensing contained the following definition section in pertinent part:

> (4) "Identification card" means a pocket card issued by the commissioner evidencing that the holder has met the qualifications required by this part to perform the duties of a private investigator in this state;

---

[4]We note that the Defendant has challenged the definitions section regarding private investigators. Our conclusion about that issue warrants the use of the aforementioned definition.

(5) "Investigations company" means any person who engages in the business or accepts employment to obtain or furnish information with reference to:

(A) Crime or wrongs done or threatened against the United States or any state or territory of the United States;

(B) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputations or character of any person;

(C) The location, disposition or recovery of lost or stolen property;

(D) The cause or responsibility for fires, libels, losses, accidents, damages or injuries to persons or to property; or

(E) The securing of evidence to be used before any court, board, commission, officer or investigating committee;

. . .

(9) "Private investigator" means any person who performs one (1) or more services as described in subdivision (4);

As it stood when the Defendant committed the offenses, subsection (9) referred to "identification card" as the definition of "private investigator," which is clearly a nonsensical cross-reference. Obviously, subsection (5) defines "private investigator" correctly. In an amendment effective May 31, 1993, the legislature changed the subsection (9) cross-reference and substituted the number (5) for the number (4). Tenn. Code Ann. § 62-26-202 (Supp. 1993).

At his trial on January 9 and 10, 1995, the trial court charged the jury with the amended definition section contained in the statute. The Defendant contends that the use of the amended statute at his trial amounts to an application of an ex post facto law. The term "ex post facto" as used in Article I, § 10, cl. 1, of the U.S. Constitution, provides that "[n]o state shall ... pass any ... ex post facto law...." The Tennessee Constitution's ex post facto prohibition found in Article I, § 11, provides:

> That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made.

Two critical elements must be present for a law to fall within the prohibition. First, it "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it." Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)); State v. Ricci, 914 S.W.2d 475, 480 (Tenn. 1996). Furthermore, Tennessee Code Annotated section 39-11-112 provides that:

> whenever any penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, any offense, as defined by the statute or act being repealed or amended, committed while such statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense.

Although the amended statute in question is not a penal statute per se, the Defendant argues that ex post facto concerns apply because the definition of "private investigator" constitutes an element of the offenses for which he was charged. The Defendant admits, and we agree, that the statute as written when the offenses were committed is patently ambiguous.

The basic rule of statutory construction is to ascertain and give effect to the intent or purpose of the legislature as expressed in the statute. Metropolitan Government of Nashville & Davidson Co. v. Motel Systems, Inc., 525 S.W.2d 840 (Tenn.1975); State v. South land News Co., Inc., 587 S.W.2d 103,106 (Tenn. Crim. App. 1979). We must consider the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced

or subtle construction to limit or extend the import of that language. <u>Worrall v. Kroger Co.</u>, 545 S.W.2d 736 (Tenn. 1977).

We must try to reconcile inconsistent or repugnant provisions of a statute and attempt to construe a statute so that no part will be inoperative, superfluous, void or insignificant. We must try to give effect to every word, phrase, clause and sentence of the act in order to achieve the Legislature's intent, and we must construe a statute so that no section will destroy another. <u>Tidwell v. Collins</u>, 522 S.W.2d 674, 676-77 (Tenn. 1975); <u>City of Caryville v. Campbell County</u>, 660 S.W.2d 510, 512 (Tenn. App. 1983). Moreover, we cannot presume that the legislature intended to place superfluous terms in the statute; and all language in a statute is presumed to have some meaning. <u>State v. Vestal</u>, 611 S.W.2d 819, 821 (Tenn. 1981); <u>see</u> <u>State v. Northcutt</u>, 568 S.W.2d 636 (Tenn. Crim. App. 1978).

Furthermore, if a statute is ambiguous, it is proper to reference the original acts of the legislature to determine the legislative intent. <u>Automatic Merchandising Co. V. Atkins</u>, 205 Tenn. 547, 557, 327 S.W.2d 328, 332 (1959); <u>Roberts v. Cahill Forge & Foundry Co.</u>, 181 Tenn. 688, 693, 184 S.W.2d 29, 31 (1944). The definitions section in the Act relative to private investigator licensing was passed March 26, 1990, during the 1990 session of the legislature. Pub. Acts. 1990, ch. 780, § 3. A review of the Act reveals that the original version contained the following order of definitions:

> (4) "Investigations company" means any person who engages in the business or accepts employment to obtain or furnish information with reference to:

(A) Crime or wrongs done or threatened against the United States or any state or territory of the United States;

(B) The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputations or character of any person;

(C) The location, disposition or recovery of lost or stolen property;

(D) The cause or responsibility for fires, libels, losses, accidents, damages or injuries to persons or to property; or

(E) The securing of evidence to be used before any court, board, commission, officer or investigating committee;

. . .

(8) "Private investigator" means any person who performs one (1) or more services as described in subdivision (4);

(10) "Identification card" means a pocket card issued by the commissioner evidencing that the holder has met the qualifications required by this part to perform the duties of a private investigator in this state.

As it was originally enacted, the internal cross-references clearly indicated that the definition of "private investigator" was contained in subsection (4) for "investigations company." This contrasts with the nonsensical cross-references contained in the statute as it was codified by the 1990 Tennessee Codification Act, section 1. We note that it is the practice of the Code Commission which reviews acts passed by the legislature and to be later codified in the Tennessee Code Annotated, to place individual definitions in the definitions sections of statutes in alphabetical order.[5] Thus, "identification card" was apparently moved from its original place after "qualifying agent" to between "commissioner" and "investigations company," its proper place alphabetically. Moreover, the caption of the 1990 Tennessee Codification Act states that "to provide in case of any conflict between the Acts of 1990 Session of the General Assembly and this Act, the former shall be controlling." (emphasis added).

---

[5]The Tennessee Code Commission, in conjunction with the Michie Company, the publishers of Tennessee Code Annotated, follow a policy of alphabetizing definitions in new material added to the Code pursuant to Style Examples for T.C.A.(g)(7), an informal policy manual.

Thus, the Act contained in Chapter 780 of the Public Acts of 1990, containing the proper definitions, controls in the case sub judice.  Even though the trial court charged the statute as amended, it substantively comports with the original form of the law that was applicable when the offenses were committed. In effect, the elements required to prove that the Defendant violated the private investigator licensing provisions or for impersonation of a licensed professional did not change between the original enactment and the amendment.  Without a substantive change, the Defendant has suffered no disadvantage. For this reason, the retrospective application of the statute in question in the form of a jury instruction does not comprise an ex post facto violation.  Although the Defendant has made a very creative and intriguing argument, we conclude that this issue is without merit.

Accordingly, we affirm the judgment of the trial court.


_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
JOE G. RILEY, JUDGE