[No. A016724. First Dist., Div. Three. Aug. 29, 1984.]

EVANS PRODUCTS COMPANY, Plaintiff and Respondent, v. MILLMEN'S UNION NO. 550, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL-CIO, Defendant and Appellant.

816

COUNSEL

Van Bourg, Allen, Weinberg & Roger and David A. Rosenfeld for Defendant and Appellant.

Berman, Cassel & Carter and Robert M. Cassel for Plaintiff and Respondent.

OPINION

WHITE, P. J.—This is an appeal by Millmen's Union No. 550, (Union) from a judgment granting the petition of Evans Products Company (Evans) to vacate an arbitration award. We affirm.

The underlying facts are not in dispute. Evans and the Union are parties to the 1976-1978 master agreement (Agreement) between certain Union locals and the Lumber and Mill Employers Association. This Agreement is a contract within section 301 of the National Labor Management Relations Act as amended. (29 U.S.C. § 185.) Evans is an employer within the meaning of the National Labor Management Relations Act (29 U.S.C. § 152 (2)) and is engaged in an industry affecting commerce. (29 U.S.C. § 152 (7).) Evans is also subject to the child labor provision of the Fair Labor Standards Act (FLSA) and applicable regulations. (29 U.S.C. §§ 203, 212.) The Union is an unincorporated association which represents the employees of Evans for purposes of collective bargaining, grievances, etc., and is a labor organization within the meaning of the National Labor Relations Act, as amended. (29 U.S.C. § 152 (5).)

The Agreement provided for final and binding arbitration if within a specified time limit the grievance committee could not resolve any dispute as to the interpretation or application of the Agreement or if either party contended that the other had violated the Agreement. (§ 18, subds. (c), (e).)

On July 5, 1977, the Union dispatched Adrian Landers to Evans' Fremont trussyard to fill a vacancy, pursuant to section 2 of the Agreement, which establishes a nonexclusive hiring hall. Section 2(b), the hiring section of the Agreement, required Evans to hire individuals referred to it by the Union if qualified for the existing job vacancy.

Landers was dispatched for an off-bearing tailoff position. The duties of this position included the removal of cut lumber from a power-driven saw, manual cleaning of debris away from the saw to prepare it for the next cut, assisting the sawman in changing the saw blades, and the routine cleaning

of the saw motors with a pressurized air hose to prevent sawdust build-up and the spontaneous combustion which might be caused thereby. When Landers applied for the off-bearing tailoff position he was 17 years old; Evans discovered this fact when Landers submitted his written employment application. Evans refused to hire Landers solely because the position required that he perform duties specifically declared to be hazardous by the Secretary of Labor in Hazardous Occupations Order No. 5, 29 Code of Federal Regulations, section 570.55 (1983), and thereby illegal for persons under the age of 18, pursuant to the child labor provisions of the FLSA.

Pursuant to the above-mentioned procedures in the Agreement, the Union filed a grievance on behalf of Landers alleging that Evans' refusal to employ him violated the discrimination act on the basis-of-age provision of section 9(h)[1] of the Agreement.

After Evans and the Union were unable to resolve the grievance, they agreed to submit the matter to final and binding arbitration and chose Mr. David Feller as the neutral arbitrator.

After his selection, but before the arbitration hearing, Feller informed the parties in writing of his view that his function was confined to the interpretation of the Agreement.[2]

Before the arbitration hearing Feller reiterated his view that he did not have the authority to consider the application of the "external" child labor laws unless the parties stipulated to such an extension of his jurisdiction. The parties refused to do so although the Union was willing to have the arbitrator decide the factual issue and leave the legal issue for another tribunal. Evans stated that its only defense[3] was Landers' age and asked the arbitrator to disqualify himself because of his stated predisposition on the central issue. The arbitrator refused and then concluded that Evans' refusal to employ Landers violated the age discrimination clause (9(h)) of the Agreement.

---

[1]So far as pertinent this provision prohibited *discrimination* "*against any employee* or applicant for employment *on the basis of age*. . . ." (§ 9(h); italics added.)

[2]The arbitrator's position was predicated on the following provisions of the Agreement: "Section 9(i): [¶] It is expressly agreed by the parties that if any word, phrase, clause, paragraph, subparagraph or section is found to be illegal, the parties intend that the remaining portions of this Agreement shall remain in full force and effect. [¶] Section 18 (f): Neither the Grievance Committee nor the Arbitrator has any authority to modify or add to any of the terms and provisions of this Agreement, nor to make any decisions on matters not covered by specific provisions of this Agreement. Nothing herein shall deprive a court of its powers to determine any question arising with this Section 18, in accordance with ordinary business contract principles."

[3]In doing so, Evans argued that while there was another possible defense (namely that the age discrimination clause of the Agreement was meant to include the provisions of the federal Age Discrimination Act (29 U.S.C. § 621) which applies only to discrimination between the ages of 40 and 65, it was relying only on the child labor law defense.

The award in favor of the Union was received by the parties on or about February 12, 1978. On May 22, 1978, Evans filed its timely petition to vacate the award, alleging inter alia that: 1) the position for which Landers was dispatched would require him to perform duties in violation of the child labor laws; 2) the award commanded actions illegal under the FLSA. The court so found and further found that the Union's response and request to confirm the award were untimely filed on June 19, 1978. The court concluded that the parties were unable to reach agreement as to the issue to be determined by the arbitrator and granted Evans' petition to vacate the award pursuant to Code of Civil Procedure section 1286.2, subdivisions (d), (e).

■ Code of Civil Procedure section 1290.6 provides so far as pertinent that a response shall be served and filed within 10 days after service of the petition. Since the Union's response was not duly served and filed, the court below properly concluded that the allegations of Evans' petition were deemed to be admitted by the Union. (Code Civ. Proc., § 1290; *De Mello* v. *Souza* (1973) 36 Cal.App.3d 79, 83 [111 Cal.Rptr. 274].)

The parties agree that we must apply substantive federal law. (*Merrick* v. *Writers Guild of America, West Inc.* (1982) 130 Cal.App.3d 212, 213 [181 Cal.Rptr. 530].) The applicable rules were recently summarized in *George Day Const.* v. *United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471 at page 1477: ■ "Where the decision [of an arbitrator] involves contractual interpretation, we must defer as to any decision which draws its essence from the Agreement. (*Id.*; *United Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).) Therefore if on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. (*Holly Sugar Corp.* v. *Distillery, Rectifying, Wine & Allied Workers Int'l Union*, 412 F.2d 899, 903 (9th Cir. 1969).) This remains so even if the basis for the decision is ambiguous, *W. R. Grace & Co.*, 461 U.S. 757 at 764, 103 S.Ct. [2177] at 2182 [(1983)]; *Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361, and notwithstanding the erroneousness of any factual findings or legal conclusions, absent a manifest disregard of the law. (*American Postal Workers* v. *U.S. Postal Service*, 682 F.2d 1280, 1284 (9th Cir. 1982), cert. denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).)"

■■ The purpose of the federal arbitration law is to make arbitration agreements as enforceable as other contracts, and it is a general principle of contract law that courts will not enforce contracts requiring the performance of an illegal act. (*American Postal Workers, supra,* 682 F.2d at p. 1286.) ■ Thus we are not bound to defer to an award that actually violates the law or any explicit and well defined and dominant public policy. (*W. R. Grace & Co.* v. *Local Union 759* (1983) 461 U.S. 757, 764 [76 L.Ed.2d 298, 306, 103 S.Ct. 2177, 2182].)

The arbitrator's award would compel Evans to contravene the child labor provisions of the FLSA and was therefore not enforceable on grounds of illegality alone.[4]

■ ■■■ The judgment[5] is affirmed.

Scott, J., and Barry-Deal, J., concurred.

---

[4]We therefore need not discuss the alternate grounds for vacating the award pursuant to Code of Civil Procedure section 1286.2.

[5]As to the Union's suggestion that by the time of the court's notice of intended decision (Sept. 1, 1978) Landers had reached the age of 18 and there was no longer a violation of the FLSA we state that ". . . It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, *an appellate court will consider only matters which were part of the record at the time the judgment was entered. (People's Home Sav. Bank* v. *Sadler* (1905) 1 Cal.App. 189, 193 [81 P. 1029].) This rule preserves an orderly system of appellate procedure by preventing litigants from circumventing the normal sequence of litigation." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 813 [180 Cal.Rptr. 628, 640 P.2d 764].) In the exceptional case where courts do consider postjudgment events, they are usually undisputed facts (as in *Pisciotta, supra*), legislative changes, (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, fn. 2 at p. 182 [185 Cal.Rptr. 260, 649 P.2d 902]) or certain subsequent events (*Estate of Henry* (1960) 181 Cal.App.2d 173, 176 [5 Cal.Rptr. 582] [death of party].) In any event, assuming the fact is properly before us, we have discretion to resolve an issue of continuing public interest that is likely to recur in other cases (*Daly* v. *Superior Court* (*Duncan*) (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 715-716 [106 Cal.Rptr. 21, 505 P.2d 213]) or that is presented in the context of a controversy so short-lived as to evade normal appellate review. (*San Jose Mercury-News* v. *Municipal Court* (*Garza*) (1982) 30 Cal.3d 498 [179 Cal.Rptr. 772, 638 P.2d 655]; *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301].) Such a resolution is particularly appropriate when it is likely to affect the future rights of the parties before us. (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717].)