[No. G014505. Fourth Dist., Div. Three. Aug. 7, 1995.]

THOMAS J. CHANTILES, Plaintiff and Appellant, v.
LAKE FOREST II MASTER HOMEOWNERS ASSOCIATION,
Defendant and Respondent.

COUNSEL

John F. Kunath, Jr., for Plaintiff and Appellant.

Richard A. Tinnelly and Anthony M. Garcia for Defendant and Respondent.

OPINION

WALLIN, J.—In this case we are asked to consider the extent of a homeowner association director's rights to inspect the records of the association under Corporations Code section 8334.[1] Here a director asks us to conclude his inspection rights are absolute and include an unfettered right to review and copy the ballots cast by the association's homeowner members in its annual election of its board of directors. The association asks us to hold, as the trial court did, that a director's rights of inspection must be balanced against the members' legitimate expectations of privacy in their voting decisions. We affirm.

Thomas J. Chantiles was an elected member of the board of directors of the Lake Forest II Master Homeowners Association (the Association). The Association elects its seven directors annually. Voting is cumulative, meaning that each homeowner member has seven votes per election which may be divided however he or she wishes among the candidates, for example, the member may cast one vote for each of seven candidates or all seven votes for one candidate.

As required by law, voting is done by a proxy ballot, rather than by direct written ballot. The proxy ballots are mailed to each member. The ballot

---

[1]Corporations Code section 8334 provides: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director." All further statutory references are to the Corporations Code unless otherwise indicated.

gives the member several options. He or she first designates a person as that member's voting proxy holder. If no person is named, by default, the chair of the Association's election committee is the designated proxy holder. The proxy holder is authorized to cast the member's seven votes. The member may indicate on the ballot how those votes are to be cast, i.e., he or she may directly vote for the candidates listed on the ballot. If no direction is made, the proxy holder has discretion to cast the votes in whatever way he or she chooses. The member may indicate on the ballot that the proxy designation is solely for the purpose of achieving a quorum and no votes may be cast for any candidate.

The member may either mail the proxy back to the Association or hand deliver it and place it in the ballot box. The chair of the election committee holds the ballots for tabulation. As an alternative, candidates may directly solicit proxies from members which the candidate hand delivers at the annual meeting for tabulation. The proxy ballot form which a candidate might directly solicit is slightly different from the form which is mailed to members, but contains the same options and information.

Chantiles had served as a director of the Association for many years. He ran for a 10th term in 1992 and was reelected, apparently as a member of a minority faction. Believing that he had been shorted by 800 to 1,300 proxy votes, which he presumably would have cast for other candidates from his faction, Chantiles demanded the Association allow him to inspect and copy all of the ballots cast in the 1992 annual election. Citing its concern for preserving the privacy of individual voting members, the Association refused.

In July 1992 Chantiles filed a complaint Orange County Superior Court case No. 693389, seeking a judicial determination of the validity of the election under section 7616. On August 19, counsel for the Association met with Chantiles to attempt to resolve the matter. The meeting was unproductive. In September the parties agreed to allow Chantiles to inspect the ballots in the Association's counsel's office, in the presence of a monitor for each side, but that meeting never took place. The complaint was dismissed without prejudice on December 1.

On December 18, 1992, Chantiles filed this petition for writ of mandate (Code Civ. Proc., § 1085) to compel the Association to permit the inspection and copying of the ballots under section 8334, which gives directors of nonprofit corporations the right to inspect and copy corporate records. The Association opposed the writ, arguing that unfettered access to the ballots

would violate its members' expectations that their votes were private. It submitted declarations from 120 members who stated they believed their ballots to have been secret when they cast them, and they did not wish the ballots to be divulged to Chantiles.

The trial court concluded the ballots were the type of record to which a director had a right of inspection pursuant to section 8334. However, members had a legitimate expectation of privacy in their ballots against which the inspection right must be balanced. In May 1993 the court issued its writ of mandate. It ordered the Association to make available to Chantiles's attorney, John Kunath, Jr., *all* ballots cast in the 1992 election. Counsel for the Association, or another representative, could be present during the inspection. Mr. Kunath could take notes while inspecting, but those notes could not contain the names of voting members, only the names of their designated proxy holders. He could not disclose to anyone the names of persons who voted or how any individual voted, without further order of the court. The court reserved the issue of attorney fees and costs. Rather than conduct the inspection authorized by the court, Chantiles filed the instant appeal.

I

The Association contends the appeal is moot because Chantiles is no longer on its board of directors and therefore cannot assert a director's inspection rights. At the annual meeting on June 3, 1993, Chantiles was not reelected to the board of directors.[2] Although we have located no California case addressing the effect of a director's defeat, other states have held "the right of a director [of a nonprofit corporation] to inspect the books and records of the corporation ceases on his removal as a director, by whatever lawful means[.]" (*State* v. *Soc. for Pres. of Common Prayer* (Tenn. 1985) 693 S.W.2d 340, 343.) Chantiles essentially concedes he no longer has a director's inspection rights, but asserts the appeal is not moot for several reasons. First, the trial court specifically reserved the issues of costs and attorney fees (see § 8337), which, Chantiles argues, cannot be decided if we dismiss the appeal. He also argues the issue of a director's inspection rights is one of public importance which we should decide, even if it is technically moot.

[2]The Association requested it be allowed to produce this additional fact on appeal. (Code Civ. Proc., § 909.) Its proffered evidence is the declaration of the Association's general manager to the effect that Chantiles was not reelected. Chantiles objects to our receiving the declaration because it does not indicate the geographic location where it was signed. However, he readily concedes he was not reelected in 1993, and does not object to our receiving this fact. Because that is the only salient fact contained in the proffered declaration, we grant the Association's motion to take additional evidence. The Association also filed a separate motion to dismiss which we consider in conjunction with the appeal.

Finally, he contends the issue is likely to recur between these same parties, as he may be reelected.

It is this court's duty " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " (*Consol. etc. Corp.* v. *United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725]; see also *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717]; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].)

We may, in appropriate circumstances, exercise our discretion to retain and decide an issue which is technically moot. (*Davies* v. *Superior Court* (1984) 36 Cal.3d 291, 294 [204 Cal.Rptr. 154, 682 P.2d 349].) We do so when the issue is of substantial and continuing public interest. (*DeRonde* v. *Regents of University of California* (1981) 28 Cal.3d 875, 880 [172 Cal.Rptr. 677, 625 P.2d 220].) Such a resolution is particularly appropriate when the issue is "presented in the context of a controversy so short-lived as to evade normal appellate review" (*Evans Products Co.* v. *Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 820, fn. 5 [205 Cal.Rptr. 731]; see also *San Jose Mercury-News* v. *Municipal Court* (1982) 30 Cal.3d 498 [179 Cal.Rptr. 772, 638 P.2d 655]; *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301]), or when it is likely to affect the future rights of the parties (*Evans Products Co.* v. *Millmen's Union No. 550*, *supra*, 159 Cal.App.3d at p. 820, fn. 5).

Membership in condominiums, cooperatives and planned unit developments, known as "common interest" developments, is increasingly common. (*Nahrstedt* v. *Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 370 [33 Cal.Rptr.2d 63, 878 P.2d 1275].) Common interest developments number in the tens of thousands. (See Sproul & Rosenberry, Advising California Condominium and Homeowners Associations (Cont.Ed.Bar 1991) § 1.1, p. 2 (Sproul & Rosenberry) [by 1986 there were 13,000 to 16,000 common interest developments in California.].) Such developments are usually governed by a homeowners association which is incorporated as a nonprofit mutual benefit corporation under section 7110 et seq. (Sproul & Rosenberry,

*supra*, § 1.9, p. 9.) The homeowners association is governed by a board of directors. (§ 7210.) The directors are elected by the association members for a term specified by the articles of incorporation, not to exceed four years. (§ 7220, subd. (a).) Chantiles, and the other directors of the Association, are elected for terms of only one year, as is common with many homeowners associations.

 We agree with Chantiles that the issue presented here, the extent of an elected director's rights to inspect election ballots, is of significant public interest concerning a large number of citizens. For many Californians, the homeowners association functions as a second municipal government, regulating many aspects of their daily lives. The court in *Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642 [191 Cal.Rptr. 209], noted the "quasi-governmental" nature of homeowners associations. " '[U]pon analysis of the association's functions, one clearly sees the association as a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government. As a "mini-government," the association provides to its members, in almost every case, utility services, road maintenance, street and common area lighting, and refuse removal. In many cases, it also provides security services and various forms of communication within the community. There is, moreover, a clear analogy to the municipal police and public safety functions. All of these functions are financed through assessments or taxes levied upon the members of the community, *with powers vested in the board of directors . . .* clearly analogous to the governing body of a municipality.' " (*Id.* at p. 651, italics added.)

We also agree that the controversy would often be so short-lived as to escape appellate review. The Association's directors serve only for one-year terms. That is often the case with homeowners' associations. Therefore, we exercise our discretion to retain the matter and decide the issue.[3]

## II

 Although the writ of mandate was ostensibly in Chantiles's favor, he contends the restrictions the trial court placed upon inspection of the ballots effectively wiped out any inspection rights he had. He argues section 8334 confers an *absolute* right to inspect and copy all corporate books, records and property and the ballots are documents to which a director has a right of access. The Association concedes the ballots are the kind of record subject to section 8334, but argues a director's right to inspect them must be

---

[3]Accordingly, the Association's request for sanctions against Chantiles for maintaining a moot appeal is denied.

balanced against its members' expectation of privacy in voting. We consider first the nature of any privacy right in the ballots and the nature of a director's inspection rights. We then consider whether the trial court properly balanced those rights in fashioning its order.

Chantiles begins by asserting that the homeowner members of the Association have *no* legitimate expectation of privacy in their voting decisions because the voting is done by proxy. A proxy by its very nature connotes revealing to another person one's voting choice. Furthermore, he argues, the homeowners must certainly realize that their votes will be revealed to the inspector of elections who is charged with tabulating the proxy votes, again negating any expectation of privacy.[4]

Section 7513 governs the balloting process in the election of directors. Although that section does not mandate confidentiality in voting, the Department of Real Estate Regulations governing common interest developments specifies, "Voting for the governing body shall be by secret written ballot." (Cal. Code Regs., tit. 10, § 2792.19, subd. (b)(1).)[5] However, proxy voting is required when an association's bylaws provide for cumulative voting, as is the case here. (§§ 7513, subd. (e), 7615.) A "proxy" is defined as the "written authorization" of one member giving another person "power to vote on behalf of such member." (§ 5069.)

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." (Italics added.) ▪ This privacy right protects against invasions by private citizens as well as by the state. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633]; *Heda* v. *Superior Court* (1990) 225 Cal.App.3d 525, 527 [275 Cal.Rptr. 136]; *Chico Feminist Women's Health Center* v. *Scully* (1989) 208 Cal.App.3d 230, 242 [256 Cal.Rptr. 194].)

---

[4]The board of directors may appoint an inspector of elections before the annual election. The inspector has the power to "determine the number of memberships outstanding and the voting power of each, the number represented at the meeting, the existence of a quorum, and the authenticity, validity and effect of proxies, receive votes, ballots or consents, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes or consents, determine when the polls shall close, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all members." (§ 7614, subd. (b).) The inspector must perform those duties "impartially, in good faith, to the best of [his or her] abilit[ies] and as expeditiously as is practical." (§ 7614, subd. (c).)

[5]Also, the California Constitution, article II, section 7, governing voting for public office provides, "Voting shall be secret."

■ Although the issue of whether ballots cast in a homeowners association election are confidential or subject to a constitutional privacy right has not been previously addressed, we must examine the "reasonable expectations of the members" in deciding the issue. (Sproul & Rosenberry, *supra*, § 2.44, p. 92.) In *Hill* v. *National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th 1, the court stated there is a legally recognized privacy interest "in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy')[.] . . . [¶] Informational privacy is the core value furthered by [California Constitution, article I, section § 1]. A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity. Such norms create a threshold reasonable expectation of privacy in the data at issue." (*Id.* at p. 35.)

Certainly in the case of direct written ballots cast by a member for a candidate, ". . . the reasonable expectation of members is that their personal voting decision will not be known to other members, as it would be in a vote conducted by a show of hands." (Sproul & Rosenberry, *supra*, § 2.44, pp. 92-93.) We reject Chantiles's assertion that there is no similar expectation of privacy in a written proxy ballot. A member has three choices in casting a proxy vote. He or she may give a proxy to a specific person, or the inspector of elections if no one is designated, to vote as that member directs. The member may give a proxy to a person to vote the member's vote as the proxy holder desires. The member may give a proxy to a person or the inspector of elections for the sole purpose of establishing a quorum so the annual meeting may go forward. In choosing any of those options, a member has an expectation of privacy. "And, of course, the custodian of such private information may not waive the privacy rights of persons who are constitutionally guaranteed their protection." (*Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 526 [174 Cal.Rptr. 160].)

The trial court correctly concluded homeowners association voting was a class of information in which members have a reasonable expectation of privacy. The Association submitted declarations of 120 members stating they believed their ballots were private and they did not want them divulged. In its written tentative ruling, after noting the increasing power homeowners associations wield in their members' everyday lives (see also *Cohen* v. *Kite Hill Community Assn.*, *supra*, 142 Cal.App.3d at p. 651), the trial court stated, "Homeowner association elections may raise emotions as high or higher than those involved in political elections. Under these circumstances a degree of privacy afforded to the electors in such elections appears to be desirable. Neighbors may cease to speak to each other if it became publicly

known that certain votes were cast. Voters may be intimidated to vote in a certain way should their ballot be subject to public scrutiny. [¶] Under these circumstances, the expectation of privacy to which many of the voters certified in their declarations gains credibility." Chantiles submitted nothing to the contrary.

We consider next the extent of a director's inspection rights. Section 8334 provides, "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind and to inspect the physical properties of the corporation of which such person is a director." (See also Cal. Code Regs., tit. 10, § 2792.23, subd. (f).) Chantiles contends his inspection and copying rights are absolute and not subject to any privacy rights of the members. Although section 8336 provides that the trial court "may enforce the demand or right of inspection with just and proper conditions[,]" he argues that proviso applies only to conditions on the hours of inspection, not on the manner or extent of his inspection.

We reject Chantiles's assertion because section 8334 gives him an "absolute right" to inspect, this right need not yield to any other right, not even a constitutional right. As Sproul and Rosenberry note, "[Section 8334's] broad and unqualified statement of a director's inspection rights can present difficult ethical and legal issues . . . . [For] example, what if a director who ran for office on a platform critical of the present general manager's conduct and salary demands the right to inspect the general manager's personnel file and to disclose its contents to the members . . . ? [¶] [T]he manager's constitutional right of privacy under [California Constitution, article I, section 1] may preempt a director's general rights of inspection[.]" (Sproul & Rosenberry, *supra*, § 2.52, pp. 103-104; see also Advising California Nonprofit Corporations (Cont.Ed.Bar 1984) § 8.53, p. 439 ["A director's right of inspection may be subordinate to other statutes specifically protecting confidential, private, or privileged records against inspection, although there is no such express provision."].)

The need for balancing privacy rights against other statutory rights is well recognized. In *Board of Trustees* v. *Superior Court, supra*, 119 Cal.App.3d 516, the court conducted a " 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy' " when it denied a plaintiff's request for discovery of confidential personnel records. (*Id.* at p. 525.) In *Heda* v. *Superior Court, supra*, 225 Cal.App.3d 525, the court concluded a plaintiff's statutory right to trial preference based on the defendant's ill health was outweighed by the defendant's right of privacy when it denied the plaintiff discovery of the defendant's medical records.

(*Id.* at p. 529.) Chantiles offers no compelling argument for concluding a balancing of rights is inappropriate. We hold that homeowners association members have a constitutional privacy right in their voting decisions, even when conducted by proxy ballot. A homeowners association director's statutory right to inspect the records of the association must be balanced against this privacy right.

■ We consider finally, whether the trial court's order properly balanced these competing interests. Chantiles states his purpose in inspecting the ballots was to determine whether he had been shorted proxy votes. It was his intention to compare the ballots with his own list of homeowners on which he monitored the proxies promised him. He would later determine whether a judicial challenge would be brought. Chantiles wanted to compare the votes he believed he had been promised to the votes he actually received. We can conceive of no greater violation of the privacy of the Association's members. Any neighbor may well have told Chantiles he would receive his or her proxy votes, but actually cast his or her votes otherwise. To now give Chantiles personal access to the names of those voting and how they voted certainly violates well-established social norms.

The trial court offered a reasonable resolution. It appointed Chantiles's own attorney to review and tally the ballots, provided he not disclose the name of any individual voter, or how he or she voted, without further order of the court. Chantiles refused this resolution, which strongly suggests his motive was not simply to check the math, but to find out how his neighbors actually voted. He cannot now complain that he was denied such an opportunity. The trial court's order was appropriate.[6]

### III

■ The trial court specifically reserved the issues of attorney fees and costs. Section 8337 provides that in any action to enforce inspection rights "if the court finds the failure of the corporation to comply with a proper demand . . . was without justification," the court may award reasonable costs and expenses, including attorney fees. Chantiles argues the matter must be remanded for a determination of costs and attorney fees below.

We need not remand the matter. The trial court may only exercise its discretion to award costs and attorney fees if it finds the Association acted

---

[6]As discussed in section I, *ante*, since Chantiles is no longer a director, he has no current inspection rights. Nor do we perceive any legitimate corporate interest he would have in the future, if reelected, for inspecting the 1992 election ballots. Thus, as far as that election is concerned, this controversy is ended.

without justification. It is not reasonably probable that the court would make such a finding here. Implicit in its ruling was that the Association had a duty to guard the privacy rights of its members in their voting decisions. Furthermore, the trial court offered a reasonable remedy to Chantiles which he refused. We affirm the trial court's conclusion. The Association's refusal to allow Chantiles the unfettered access to the ballots which he demands was not unjustified. Therefore, he is not entitled to costs and attorney fees.

The judgment is affirmed. Respondent is entitled to its costs on appeal.

Sills, P. J., concurred.

**CROSBY, J.,** Concurring.—Thomas J. Chantiles was a member of the homeowners association's board of directors when he filed this action. He lost that seat in an election after the trial court entered judgment. As he is no longer a director, he enjoys no inspection rights under Corporations Code section 8334; and for that reason alone I concur in the decision not to award him any relief.

While the appeal is technically moot, in my view, as to Chantiles, the issue is one "of continuing public interest and likely to recur in circumstances where, as here, there is insufficient time to afford full appellate review" (*Leeb* v. *DeLong* (1988) 198 Cal.App.3d 47, 51-52 [243 Cal.Rptr. 494]). Accordingly, I agree with my colleagues that it should be addressed. But I disagree with their analysis.

Corporations Code section 8334 was enacted in 1978, years before the election in this case. And the inspection rights it confers on directors of corporations are unconditional: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind . . . of the corporation of which such person is a director." Where, as here, a statute is unambiguous, a court should simply apply it without indulging in interpretation. (See, e.g., *Brewer* v. *Patel* (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65].)

My colleagues suggest this *absolute* right of inspection is nevertheless qualified and may be defeated when the director's request is animated by an improper motive. (Maj. opn., *ante*, p. 926.) They also conclude it must yield to the association members' constitutional right of privacy (Cal. Const., art. I, § 1), i.e., to keep voting decisions confidential. But the members could not have had any expectation—reasonable or otherwise—that proxies could be withheld from the association's directors, and the majority's improper motive analysis is at odds with both clear statutory language and case law.

The constitutional right to privacy is not absolute (*County of Alameda v. Superior Court* (1987) 194 Cal.App.3d 254, 260 [239 Cal.Rptr. 400]); it only applies where there is an objectively reasonable expectation of privacy. (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 36-37 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Although some association members submitted declarations attesting to their belief in the confidentiality of the proxies, they had no objectively reasonable expectation of privacy. Quite the contrary. A director could have no more important duty than assuring the honesty of association elections by carefully monitoring the tally of proxies. This certainly could involve a personal audit of the vote and a challenge to any questionable proxy.

In any event, a proxy is, by definition, not confidential. It is "a written authorization signed by a member or the member's attorney in fact giving another person or persons power to vote on behalf of such member. 'Signed' for the purpose of this section means the placing of the member's name on the proxy (whether by manual signature, typewriting, telegraphic transmission or otherwise) by the member or such member's attorney in fact." (Corp. Code, § 5069.) Under these circumstances, how homeowners association members could reasonably expect the proxies could not be scrutinized by the association's directors, with their "absolute" statutory right to inspect, is beyond me.[1]

Moreover, because the right of inspection under Corporations Code section 8334 has no exceptions, a director's motive for requesting an inspection is irrelevant. No reported decisions construe Corporations Code section 8334, but cases involving virtually identical provisions elsewhere in the Corporations Code conclude motive is irrelevant. For example, *Valtz* v. *Penta Investment Corp.* (1983) 139 Cal.App.3d 803 [188 Cal.Rptr. 922] concerned the "absolute right" under Corporations Code section 1600 of any shareholder with more than 5 percent of a company's stock to examine the shareholder list. The corporation contended a shareholder's inspection request was prompted by his desire to form a competing enterprise and refused the demand, asserting an unclean hands defense. (139 Cal.App.3d at p. 806.) Rejecting the argument, the Court of Appeal declared, "The California Legislature chose to allow inspection without any restriction based on the

---

[1]The majority notes in passing that article II, section 7 of the California Constitution states, "Voting shall be secret." But this constitutional provision applies to public elections, not homeowners association balloting. In any event, courts have consistently held that constitutional secrecy provision is not violated by election procedures that identify ballot sources. (See, e.g., *Peterson* v. *City of San Diego* (1983) 34 Cal.3d 225, 227, 231 [193 Cal.Rptr. 533, 666 P.2d 975] [use of mail ballot requiring voter's name and address does not violate article II, section 7's secrecy provision].)

shareholder's purpose and we cannot impose such a restriction via the unclean hands doctrine." (*Id.* at p. 810.)

True, *Valtz* involved a shareholder rather than a director. But a director has a stronger case for unqualified inspection rights than a shareholder. A director is a fiduciary charged with running the corporation in an informed manner. (*National Automobile & Cas. Ins. Co.* v. *Payne* (1968) 261 Cal.App.2d 403, 412-413 [67 Cal.Rptr. 784].) Because a director, unlike a shareholder, is potentially liable for failure to exercise appropriate oversight, an unconditional right to inspect is essential. (*Hoiles* v. *Superior Court* (1984) 157 Cal.App.3d 1192, 1201 [204 Cal.Rptr. 111]; see also 1A Ballantine & Sterling, Cal. Corporation Law (4th ed. 1995) § 272.02 at p. 1322 ["A director must be familiar with the affairs of the corporation in order to perform his duties and the absolute right of inspection is to assist him in performing (those) duties in an intelligent and fully informed manner."].)

Also, in light of a director's potential exposure, the denial of unconditional access to corporate books and records constitutes poor policy: well-qualified individuals might decline to serve with something less than absolute inspection rights. (Cf. *Gould* v. *American Hawaiian Steamship Company* (D.Del. 1972) 351 F.Supp. 853, 859.) As this case illustrates, to allow defenses based on a director's alleged motive would in many cases result in the right to inspect being buried in litigation before it could ever be exercised, good motive or bad.

Nor does a director's unfettered access to corporate books and records leave the corporation unprotected. Any number of tort theories may be used to redress a misuse of information gleaned via an improperly motivated inspection. (*Hoiles* v. *Superior Court, supra*, 157 Cal.App.3d at p. 1201.) Damages for misapplication of corporate information, rather than a threshold rejection of a director's inspection rights, is the appropriate remedy.[2] (*Ibid.*)

---

[2] I recognize the possibility that the right to inspect could conflict with contractual, statutory, or constitutional protections in certain circumstances, such as medical patient or legal client files (assuming they even qualify as "records and documents . . . of the corporation" per section 8334 of the Corporations Code). But no such situation is presented here, and the resolution of those problems is better left to real cases and controversies.