IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 18, 2012 Session

## KENNETH J. SIGEL, M.D.
v.
## THE MONARCH CONDOMINIUM ASSOCIATION, INC.

Appeal from the Chancery Court of Shelby County
No. CH-10-1614-2   Arnold B. Goldin, Chancellor

No. W2011-01150-COA-R3-CV - Filed June 29, 2012

This appeal involves the release of ballots for a condominium association election. The plaintiff condominium owner was a candidate for a position on the board of directors for the defendant condominium association. After losing the election, the plaintiff condominium owner requested to audit the vote and see the other members' written ballots. The condominium association provided a tally sheet reflecting the number of ballots cast for each candidate but declined to release the actual ballots. The plaintiff then filed this lawsuit, contending that the condominium association had a statutory obligation to release the ballots to him. The plaintiff later filed a motion for summary judgment. The trial court denied the summary judgment motion and dismissed the lawsuit. The plaintiff condominium owner now appeals. We affirm, finding that the plaintiff condominium owner does not have a statutory right to see the association members' written ballots.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Kenneth R. Besser, Memphis, Tennessee for the Plaintiff/Appellant Kenneth J. Sigel, M.D.

David F. Kustoff, Memphis, Tennessee for Defendant/Appellee, The Monarch Condominium Association, Inc.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Kenneth J. Sigel M.D. ("Dr. Sigel") moved to Memphis, Tennessee, from New York City in 2001, after retiring from the practice of medicine.[1]  At that time, Dr. Sigel moved directly into The Park Palace, then rental units, and has lived there more or less continuously since that time.[2]  In 2006, The Park Palace converted to condominiums, now known as The Monarch Condominiums.  Dr. Sigel owns one condominium unit.  Defendant/Appellee The Monarch Condominium Association, Inc. (the "Association") is the condominium association for the owners of the units at The Monarch Condominiums.

In 2009, Dr. Sigel sought to be elected to the board of directors for the Association.  When he learned that his candidacy was not successful, Dr. Sigel challenged the election, contending that it was not held in accordance with the master deed for the Association.  He argued, *inter alia*, that the Association was required to weight each owner's vote, depending on the size of the condominium unit and alleged that this was not done.  His challenge to that election did not succeed.

In August 2010, the Association held another election for the board of directors.  Dr. Sigel again offered himself as a candidate for a position on the board.[3]  In the meantime, Dr. Sigel set up an internet site for Monarch owners and others, known as The Monarch Condominium Google Group.  Not surprisingly, Dr. Sigel was the administrator for the Google Group site.  The site published information and discussion related to The Monarch Condominiums; much of the information apparently came from Dr. Sigel.

The Association election was conducted using written ballots.  Each ballot contained the name and unit number of the member voting with that particular ballot.  As Dr. Sigel had advocated in connection with the Association's 2009 election, the members' votes were weighted; each

---

[1]Disillusioned with the practice of medicine, Dr. Sigel retired in his forties to manage his substantial investments from family assets.

[2]Dr. Sigel moved out of The Park Palace briefly because of a dispute with management over his rent; this dispute did not result in litigation.  A number of Dr. Sigel's other disputes have involved litigation.  These include a lawsuit by Dr. Sigel against his brother over an alleged assault by the brother, a lawsuit against the lawyer who represented Dr. Sigel in the lawsuit against the brother, and a lawsuit against a family therapist who treated Dr. Sigel and another family member, to obtain the medical records for the family therapy.

[3]Hotly contested issues in the election for the Association's board of directors apparently included matters such as rules for the types of meetings permitted in the community room for the complex.

unit was allocated three, four, or five votes, depending on the size of the unit. Dr. Sigel was again unsuccessful in his quest to be elected a director of the Association.

Approximately a week after the election, Dr. Sigel sent an e-mail to Stephanie Simpson, an Association board member, expressing concern about the Association's tabulation of each unit's weighted vote allocation. Dr. Sigel's email concluded with a request to review the members' written ballots for the election. Dr. Sigel's email request initially went unanswered.

After receiving no response to his audit request, Dr. Sigel retained legal counsel. In a letter to the Association's board president, Dr. Sigel's lawyer made a second request on Dr. Sigel's behalf to audit the vote. Upon receipt of the letter, the Association board met to discuss it. The board decided not to release the written ballots to Dr. Sigel. Instead, the Association released to Dr. Sigel the Association's tally sheets for the board election. The election tally sheets indicated the total number of votes each candidate received but did not show the weight allocated to each condominium unit's vote or the candidate for whom each unit owner voted. The cover letter to Dr. Sigel with the election tally sheets explained: "Several homeowners expressed concern with release of their ballots." To try to assuage Dr. Sigel's concerns, the letter included an offer to arrange a third-party audit. This attempt did not succeed.

On September 7, 2010, Dr. Sigel filed the instant lawsuit against the Association in the Chancery Court of Shelby County. The complaint first asked the trial court to enjoin the Association from destroying the written election ballots, and then asked the trial court to compel the Association to produce the ballots.[4] Pursuant to this request, the trial court entered an initial order requiring the Association to obtain, maintain control of, and preserve the ballots pending resolution of Dr. Sigel's lawsuit. The Association filed an answer, denying that Dr. Sigel was entitled to the relief sought. Discovery ensued.

In the course of discovery, the depositions of Dr. Sigel, current board member Stephanie Simpson, and past board member Debra Arnett were taken. After Dr. Sigel's attorney took Ms. Arnett's deposition, Dr. Sigel promptly posted it on The Monarch Condominium Google Group site. The Google Group postings also reiterated Dr. Sigel's criticism of the Association's 2009 election, made public various types of information about particular condominium owners or former owners, and described, from Dr. Sigel's perspective, the parties' unsuccessful attempt at mediating the lawsuit.

---

[4]Dr. Sigel's lawsuit also named as a defendant Condominium Concepts, Inc., which had a management agreement with the Association. Condominium Concepts, Inc. was later voluntarily dismissed without prejudice and is not a party to this appeal.

In January 2011, Dr. Sigel filed a motion for summary judgment. In his motion, Dr. Sigel argued that the trial court should "exercise its equitable powers" and order the Association to release the election ballots pursuant to Tennessee Code Annotated §§ 66-27-417, -502, and -503. Based on his contention that the Association had illegally refused his request to see the ballots, Dr. Sigel also asked the trial court to award him a penalty fee, attorney fees, and legal expenses pursuant to Section 66-27-505. Dr. Sigel's supplemental memorandum asserted that the Tennessee Nonprofit Corporation Act, specifically Tennessee Code Annotated § 48-66-101(e)(4), also mandated that the Association release the ballots at issue. The Association's memorandum in opposition to Dr. Sigel's summary judgment motion denied that the statutes referenced by Dr. Sigel were applicable and asserted that the condominium unit owners had a reasonable expectation of privacy in their written ballots.

The trial court held a hearing on Dr. Sigel's motion on March 29, 2011. At the hearing, Dr. Sigel argued that the statutes mandated release of the written ballots, not just a tally of them. The Association argued that ballots were not mentioned in the statutes and were not covered by them. The Association's counsel argued that Dr. Sigel had testified in his deposition that he would post the members' votes on The Monarch Google Group site if given access to the ballots.[5] He argued that the condominium owners had an expectation of privacy in their vote and did not want Dr. Sigel to know their vote. The parties agreed that there were essentially no disputed facts and the Association made an oral motion to dismiss the lawsuit. The trial court then took the matter under advisement.

On April 4, 2011, the trial court entered an order denying Dr. Sigel's motion for summary judgment. It first found no disputed issue of material fact. The trial court then discussed at length its interpretation of the referenced provisions of the Tennessee Condominium Act[6]:

> First, Plaintiff relies on the language in Tenn. Code Ann. § 66-27-417 which states "All financial and *other records* shall be made reasonably available for examination by any unit owner, the holder of any mortgage or deed of trust encumbering a unit, and their respective authorized agent." (emphasis added). This single part of the Tennessee [Condominium] Act, however, cannot be read in isolation to the other provisions of the Act. Plaintiff argues that the "other

---

[5]Dr. Sigel testified in his deposition that if he believed that there was "an illegality with regard to the counting of the ballots, [he] would then reveal the illegality on The Monarch Condominium Google Group."

[6]The overall chapter in Tennessee Code Annotated is designated as the "Horizontal Property Act." *See* Tenn. Code Ann. § 66-27-101 (2011). The parts of that chapter at issue in this appeal are contained within the "Tennessee Condominium Act of 2008." Tenn. Code Ann. § 66-28-201 (2011). The trial court referred to the Tennessee Horizontal Property Act, but, for clarity and consistency, we have changed the references in the quoted excerpt from the trial court's order to the Tennessee Condominium Act.

records" language is so broad as to encompass the ballots that are the subject of this lawsuit. The argument, however, fails to take into account Tenn. Code Ann. § 67-27-503 which provides an extensive list of information that is to be provided pursuant to Tenn. Code Ann. § 66-27-502.

Plaintiff relies on Tenn. Code Ann. § 66-27-502 for his right to the requested association records. This provision provides that a unit owner may request information specified in § 66-27-503 and that the requested information is to be provided within ten business days of the receipt of the request. This part of the statute does not refer to § 66-27-417's "other records" language but instead to the detailed list provided in § 66-27-503. Furthermore, § 66-27-505, the statute which provides Plaintiff with the remedy he seeks, states that the remedies are for a failure "to provide the information required by 66-27-503." Tenn. Code Ann. § 66-27-505(a)(1).

Plaintiff also argues that the ballots at issue are considered "minutes" of a board meeting. If the ballots were minutes, they would fall under § 66-27-503(5) as information that is to be provided to unit owners upon request. It is the opinion of this Court, however, that ballots cast in a condominium board election are not minutes of a meeting nor are they "other records" referenced in § 66-27-417.

The Court must look at the entire statute as a whole so that each provision is given meaning. The right to access to [sic] condominium association records is found in § 66-27-502 which clearly references § 66-27-503 for the records that are included. The Legislature provided a detailed list of records to be included which failed to specify ballots or any category of records that would encompass ballots. If the Legislature had intended to include ballots as records that were accessible to unit owners, they would have specifically included ballots, but they did not. It would be presumptuous of the Court to assume the Legislature intended ballots to be included when they were not mentioned among the long list of records set out in § 66-27-503. This Court must look to the entire Act and the plain meaning of the language. Therefore, the Court holds that the ballots are not included within the meaning of "other records" in §66-27-417, nor are they "minutes" of meetings under § 66-27-503.

(footnotes omitted). The order addressed Dr. Sigel's argument on the Tennessee Nonprofit Corporations Act in a footnote:

In Plaintiff's First Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment, Plaintiff argues that he is also entitled to the ballots pursuant to Tenn. Code Ann. § 48-66-101 et seq[.], which governs non-profit corporations. The Court, however, disagrees. Title 48 governs Nonprofit Corporations and does provide for member access to certain records and reports of the corporation. Under the rules of statutory construction, however, a more specific statute trumps a broader statute. The Tennessee [Condominium] Act specifically governs condominium associations and provides for access to certain records, therefore, it is the proper statute for these [sic] set of facts. Even if Title 48 governs, the Court does not agree that the language in Tenn. Code [Ann.] § 48-66-101(e)(4) that states: "The minutes of all meetings of members and records of all actions approved by the members for the past three (3) years" encompasses individually cast ballots.

On this basis, the trial court denied Dr. Sigel's motion. It then observed that its denial of Dr. Sigel's summary judgment motion left nothing further to be decided and so dismissed Dr. Sigel's complaint with prejudice. Dr. Sigel now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Dr. Sigel asks this Court to consider[7] (1) whether the Tennessee Nonprofit Corporation Act is applicable to this matter, and whether the Association's written election ballots must be produced as "records" under Tenn. Code Ann. § 48-66-101(e)(4); (2) whether the election ballots are "minutes of . . . meetings of the members" under Tennessee Code Annotated § 66-27-503(5) and must be produced; and (3) whether the ballots are "other records" within the meaning of Tenn. Code Annotated § 66-27-417, and must be produced. Dr. Sigel also seeks an award of attorney fees pursuant to §§ 66-27-211 and 66-27-505.

Questions regarding the interpretation of a statute and the application of the statute to undisputed facts are issues of law; as such, they are reviewed *de novo* with no presumption of the correctness of the trial court's conclusions. ***U.S. Bank N.A. v. Tenn. Farmers Mut. Ins. Co.***, 277 S.W.3d 381, 386 (Tenn. 2009).

## ANALYSIS

When interpreting statutes, courts "must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning." ***U.S. Bank,*** 277 S.W.3d at 386 (citing ***Parks v. Tenn. Mun. League Risk Mgmt. Pool***, 974 S.W.2d 677, 679 (Tenn.

_____

[7]The issues as stated in Dr. Sigel's appellate brief are lengthy; we restate them in this Opinion.

1998). To give effect to the legislative intent, "courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used," without forcing an interpretation that would either limit or expand the meaning of the statutory language. *U.S. Bank,* 277 S.W.3d at 386; *Overstreet v. TRY Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008). We must also presume that every word in a statute has meaning and purpose. *See U.S. Bank,* 277 S.W.3d at 386 (citing *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.,* 244 S.W.3d 302, 309 (Tenn. 2007)). "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." *Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998).

## Tennessee Nonprofit Corporation Act

We first consider Dr. Sigel's contention that the trial court erred in holding that the issues in this case are governed by specific provisions of the Tennessee Condominium Act, rather than the broader provisions of the Tennessee Nonprofit Corporation Act. Dr. Sigel points to the section in the Master Deed of The Monarch Condominium Development that describes the powers and duties of the Association, which states that the Association's duties are governed by the Tennessee Nonprofit Corporation Act, Tenn. Code Ann. § 48-51-101, *et seq.* Thus, Dr. Sigel contends, the Nonprofit Corporation Act applies in this case.

After examining the Association's Master Deed, we respectfully disagree with Dr. Sigel. The Master Deed does indeed state that "[t]he powers and duties of the Association shall include those set forth in the Act, the Tennessee Nonprofit Corporation Act, Tenn. Code Ann. § 48-51-101, *et seq*., this Master Deed, the Article of Incorporation and the By-Laws, as the same may be amended from time to time." However, the election of the board of directors of the Association is governed by the Association's By-Laws. The By-Laws state specifically that they are "to comply with the requirements of Tennessee Code Annotated § 66-27-101, *et seq*.", *i.e.*, the Tennessee Horizontal Property Act, which includes the Tennessee Condominium Act.

Dr. Sigel also argues that the Nonprofit Corporation Act may apply because a provision of the Tennessee Condominium Act, Section 66-27-208, states that the Condominium Act may be "supplemented" by principles of law and equity. We find this argument unpersuasive as well. Moreover, we note that the Tennessee Condominium Act provides that a unit owners' association may be "organized as a profit or nonprofit corporation or limited liability company or . . . as an unincorporated association." Tenn. Code. Ann. § 66-27-401 (2009). Thus, if the Nonprofit Corporation Act governed this issue, the Association's duty to produce records would depend on its corporate form. This would be a peculiar result indeed.

We agree with the trial court that the Tennessee Nonprofit Corporation Act is a broad statute that governs all nonprofit corporations, while the Tennessee Condominium Act was enacted by the Legislature specifically to govern condominium associations. *See Dobbins v. Terrazzo Mach. & Supply Co.*, 479 S.W.2d 806, 809 (Tenn. 1972) (stating that "where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to effect the more particular provision."). *See also Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) ("[A] more specific statutory provision takes precedence over a more general provision.").

For these reasons, we agree with the trial court's conclusion that the Tennessee Condominium Act governs the issues in this case.

### Tennessee Condominium Act

### *Sections 502 and 503*

Under the Tennessee Condominium Act, Dr. Sigel's first argument is based on Tennessee Code Annotated §§ 66-27-502 and 503, which specifically address records that a condominium unit owners' association must provide to a unit owner. Section 66-27-502 provides:

> Responsibility to provide information.
>
> (a) The association, upon request from a unit owner, a purchaser or any lender to either a unit owner or a purchaser, or their respective authorized agents, shall provide to the requesting party, within ten (10) business days following the date of the association's receipt of the request, the information specified in § 66-27-503, to the extent applicable.

Tenn. Code Ann. § 66-27-502(a) (2011). Section 503 dovetails with Section 502. Section 66-27-503 states:

> The information to be provided pursuant to § 66-27-502 shall include the following:
>
> (1) The name and principal address of the declarant during the period of declarant control only, the association, and the condominium;
>
> (2) A copy of the recorded, or if not recorded then in substantially final form to the extent available, master deed or declaration, bylaws, charter or articles of association of the association, and all amendments of and exhibits to the

master deed or declaration, bylaws, charter or articles of association of the association;

(3) A copy of the current rules and regulations of the association;

(4) The most recent balance sheet, income statement, and approved budget for the association, or, if there has never been an approved budget, then the projected budget. . . .

* * *

(5) Minutes of all meetings of the members and/or the board of directors of the association for the twenty-four-month period ending on the date of the request;

(6) The current monthly assessment and any special assessment applicable to the unit in question, and the amount of any delinquencies in any assessments applicable to the unit;

(7) Any fees or assessments due as a result of a transfer of the applicable unit;

(8) The amount and nature of any additional fees currently imposed for use by members of the common elements or other amenities;

(9) A statement of the insurance coverage, which may be provided in the form of an appropriate certificate from the insurer, maintained by the association that includes the types of coverage, limits and deductibles of the insurance;

(10) A statement of any unsatisfied judgments and a description of any pending suits against the association;

(11) A description of any pending suits filed by the association, other than for the collection of delinquent assessments;

(12) The total amount of current monthly, annual, or special assessments for all units in the condominium that are more than sixty (60) days past due as of the most recent available report, but in no event more than ninety (90) days prior to the date of the request; and

(13) Whether the board of directors is still under declarant control and, if so, when that period of control ends.

Tenn. Code Ann. § 66-27-503 (2011). In his argument, Dr. Sigel focuses on Section 503(5), arguing that the election ballots at issue would be considered "minutes" of a meeting of the Association under Section 503(5). Dr. Sigel reasons that the ballots are the only complete recordings of the actions taken by the Association members in the election, as the tally sheets do not disclose which unit owners voted for which candidates.

We disagree with this contention. "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language . . . ." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2010) (citing *Overstreet v. TRY Comm. Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008). The legislature's use of the word "minutes" is clear and unambiguous, so we apply the plain meaning and normal and accepted use of the term. *Carter*, 279 S.W.3d at 564. Black's Law Dictionary defines "minutes" as "memoranda or notes of a transaction, proceeding, or meeting." *Black's Law Dictionary* 1087 (9th ed. 2009). We agree with the trial court's holding that the term "minutes" in Section 503(5) does not include the Association's written election ballots.

### *Section 417*

Dr. Sigel's next argument under the Tennessee Condominium Act is based on Tennessee Code Annotated § 66-27-417. Section 417 provides:

> The association shall keep financial records sufficiently detailed to enable the association to comply with §§ 66-27-502 and 66-27-503. All financial and *other records* shall be made reasonably available for examination by any unit owner, the holder of any mortgage or deed of trust encumbering a unit, and their respective authorized agents.

Tenn. Code Ann. § 66-27-417 (2011) (emphasis added). Thus, Section 417 refers expressly to Sections 502 and 503, as quoted above. The issue with respect to Section 417 is whether the Association's written election ballots are "other records" that must be made "available for examination" by Dr. Sigel.

Dr. Sigel argues that the trial court failed to realize that in enacting Section 417, the legislature intended to create two separate duties for a condominium association with respect to two separate classes of persons. Dr. Sigel contends that the first duty placed on a condominium association under Section 417 is to keep financial records that are sufficiently detailed to comply with Sections 502 and 503. Sections 502 and 503, Dr. Sigel argues, require the disclosure of specified documents to a broad class of persons, namely, unit owners, purchasers, any lender to a unit owner or a purchaser, and their authorized agents. He exhorts

us to interpret Section 417 to create a second duty, to make "all financial and other records" reasonably available to a subset of the first class, namely, unit owners, the holders of any mortgages or deed of trusts, and their authorized agents. Dr. Sigel points out that the second sentence of Section 417 broadens the information to be made available to include "all financial and other records" and clearly excludes purchasers and the purchasers' lenders, where the unit purchaser has not yet become an owner, whereas Section 502 does not. Tenn. Code Ann. §§ 66-27-502, 66-27-417. Dr. Sigel insists that the Association's written election ballots fall within the purview of "other records" that must be made available to unit owners under Section 417.

In response, the Association describes its duties under Section 417 on one hand, and its duties under Sections 502 and 503 on the other hand, as interconnected duties. The Association contends that its first duty under Section 417 is to comply with Sections 502 and 503. It further contends that the second sentence of Section 417 places a separate duty on the Association merely to make the financial and other records referenced in Section 502 and 503 "reasonably available" to the specified parties. This argument is consistent with the trial court's reasoning in its order denying Dr. Sigel's motion for summary judgment and dismissing his complaint.

Neither party has cited a Tennessee case interpreting Section 417, and this Court has found none. We find that the phrase "other records" in Section 417 is ambiguous; therefore, "we turn to 'the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose.' " **West v. Regions Bank**, No. W2010-02023-COA-R3-CV, 2011 WL 3059693, at *7 (Tenn. Ct. App. July 26, 2011) (quoting **Eastman Chem. Co. v. Johnson**, 151 S.W.3d 503, 507 (Tenn. 2004)).

Dr. Sigel ascribes to the legislature an intent to create two different duties for a condominium unit owners' association: the first under Section 502 to produce the listed documents to a broad class of persons and the second under Section 417 to produce virtually all "records" to a different subset of persons. The legislative history of the Tennessee Condominium Act does not bear out this argument. The legislative history shows that the bill on the Tennessee Condominium Act – SB2935, HB 2752 – as initially presented to the legislature included Section 417 but not Section 502(a), and made Association records available only to the unit owner, the mortgage holder, and their agents. **See** S.B. 2935/H.B. 2752, 105th Gen. Assemb., Reg. Sess. (Tenn. 2008). Before passage, the bill was amended to add Section 502(a); the amendment was described as intended to "require[] authorized agents of unit owners, purchasers, and lenders to be provided with the *same information* to which their principals[] are provided by an association, upon request." **See id.; see also** TN B. Summary, 2008 Reg. Sess. S.B. 2935 (referencing Amendment #1) (adopted Mar. 24, 2008) (emphasis added). Thus, there is no indication in the Act's legislative history that the legislature intended to

create two different duties as to two different but overlapping classes of persons. To the contrary, the bill summary by the legislative sponsor makes plain an intent to make the "same information" available under both sections of the Act.

Moreover, the structure of the component parts of the Condominium Act are consonant with the trial court's interpretation. The trial court interpreted Section 417 in light of Sections 502 and 503, not as a separate freestanding statute. "Component parts of a statute are to be construed, if possible, consistently and reasonably." **Steppach v. Thomas**, 346 S.W.3d 488, 506 (Tenn. Ct. App. 2011) (citing **State v. Alford**, 970 S.W.2d 944, 946 (Tenn. 1998)). "Moreover, specific statutory language will control over general conflicting statutory provisions." **Steppach**, 346 S.W.3d at 506-07 (citing **Arnwine v. Union Co. Bd. of Educ.**, 120 S.W.3d 804, 809 (Tenn. 2003)). In Dr. Sigel's description of the legislature's creation of two separate duties for two classes of interested parties, he does not explain why unit owners such as Dr. Sigel are included in both. Specifically, if a condominium association must make available to unit owners virtually any record in its possession under the rubric of "other records" under Section 417, there would be no need for the unit owners to be included for the list of 13 classes of documents set forth in Section 503. These principles of statutory construction were explained by this Court in **Steppach**:

> [T]his Court is further guided by the doctrines of *noscitur a sociis* and *ejusdem generis*. These concepts were discussed by our Supreme Court in **Sallee v. Barrett**, 171 S.W.3d 822, 828-29 (Tenn. 2005):
>
> > Under the doctrine of *noscitur a sociis*, "the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it." Black's Law Dictionary 1060 (6th ed. 1990); *see also* **Hammer v. Franklin Interurban Co.,** 209 Tenn. 399, 354 S.W.2d 241, 242 (Tenn. 1962) (holding that statutory terms should be construed with reference to their associated words and phrases). The doctrine of *noscitur a sociis* permits courts to modify and limit subordinate words and phrases in order to harmonize them with each other and with the evident purpose of the statute. *See* **Scopes v. State**, 154 Tenn. 105, 289 S.W. 363, 364 (Tenn. 1927).
> >
> > *Ejusdem generis* is an illustration of the broader maxim of *noscitur a sociis*. Under this doctrine of statutory construction, "where general words follow the enumeration of particular classes of things, the general words will be construed as applying

-12-

only to things of the same general class as those enumerated." Black's Law Dictionary 517 (6th ed. 1990); *see also Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994) (citing *Nance ex rel. Nance v. Westside Hosp.*, 750 S.W.2d 740, 743 (Tenn. 1988)); *State v. Sims,* 909 S.W.2d 46, 49 (Tenn. Crim. App. 1995). In other words, " 'where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class.' " *Automatic Merch. Co. v. Atkins*, 205 Tenn. 547, 327 S.W.2d 328, 333 (Tenn. 1959) (quoting *State v. Grosvenor*, 149 Tenn. 158, 258 S.W. 140, 141 (Tenn. 1924)).

*Steppach*, 346 S.W.3d at 507. The interpretation advocated by Dr. Sigel is not consonant with these principles of statutory construction.

Even if the phrase "other records" in Section 417 were interpreted to include records other than those enumerated in Section 503, we do not accept Dr. Sigel's argument that the phrase includes virtually any record held by a condominium association. Under this construction, for example, Dr. Sigel would be entitled to obtain on demand personal identifying and financial information of other unit owners, merely because documents containing such information happened to be in the file cabinets of the Association. In construing statutes, courts are admonished not to adopt an interpretation that "would yield an absurd result." *Steppach*, 346 S.W.3d at 506 (quoting *State v. Sims*, 45 S.W.3d 1, 11 (Tenn. 2001)).

We recognize that at least one state court construing similar statutory language has concluded that ballots for the election of the board of a condominium association must be made available to a unit owner on demand. *See Pantelidis v. Barclay Condo. Assen*, No. 3819, 2001 WL 1807912, at *1; 2001 Phila. Ct. Com. *Pl. LEXIS 113, at *3-4 (Pa. Com. Pl. Jan. 18. 2001) (interpreting 8 Pa. Cons. Stat. § 3316 of the Uniform Condominium Act, which provides that "all financial and other records [of a condominium] shall be made reasonably available for examination by any unit owner . . . .", to include election ballots). *See also Koslow v. Woodbridge Lake Prop. Owners Ass'n*, No. CV040092738, 2006 WL 1738237, at *3-4; 2006 Conn. Super. LEXIS 1737, at *9-10, 13 (Conn. Super. Ct. June 7, 2006) (explaining that the Connecticut legislature has granted unit owners "an unfettered right to scrutinize the accounting records" of an association based on the identical language of Conn. Gen. Stat. § 47-260 including "information concerning individual employee titles, dates of employment, and wages and benefits.").

We do not believe that such a construction would be consonant with the expectations and intent of our Legislature in interpreting the Tennessee Condominium Act. We consider the Legislature's intent in light of the fundamental expectation of privacy and secrecy in voting by written ballot, as opposed to *viva voce* voting, voting by a show of hands, or other such public voting methods. *See* 29 C.J.S. *Elections* § 322 (2012) (entitled "Secrecy in Voting") ("Privacy casting one's ballot is a sacred rule of law."). A secret written ballot is used "to prevent recrimination against people who vote for losing candidates." 26 Am. Jur. 2d *Elections* § 307 (2012) (entitled "Necessity for Secrecy.").

The Tennessee Constitution has long been interpreted to recognize the right to a secret vote in elections. *See Mooney v. Phillips*, 118 S.W.2d 224, 226 (Tenn. 1938). This was recognized in *Smith v. Dunn*, in which the court commented: "Secrecy in voting has been called '. . . one of the fundamental civil liberties upon which a democracy must rely most heavily in order for it to survive.' " *Smith v. Dunn*, 381 F. Supp. 822, 825 (M.D. Tenn. 1974) (three-judge panel) (interpreting Tennessee Constitution) (quoting *United States v. Exec. Comm.*, 254 F. Supp. 543, 546 (N.D. Ala. 1966)).

This reasoning was relied upon by a California appellate court asked to release ballots cast in a homeowners' association election to a director who demanded them. In *Chantiles v. Lake Forest II Master Homeowners Ass'n*, 45 Cal. Rptr. 2d 1 (Cal. Ct. App. Aug. 7, 1995), the court was interpreting a California statute that gave a director of such an association an "absolute right" to inspect "all . . . records and documents of every kind . . . ." *Id.* at 2. The plaintiff director had been a candidate for re-election, was apparently unhappy with the election results, and believed that he had been shorted votes. *Id.* at 3. The disgruntled director demanded that the homeowners' association allow him to inspect the ballots cast in the election. *Id.* at 3. When the association refused, he sued. The trial court declined to grant the director access to the ballots, commenting:

> Homeowner association elections may raise emotions as high or higher than those involved in political elections. Under these circumstances a degree of privacy afforded to the electors in such elections appears to be desirable. Neighbors may cease to speak to each other if it became publicly known that certain votes were cast. Voters may be intimidated to vote in a certain way should their ballot be subject to public scrutiny.

*Id.* at 6-7. The California Court in *Chantiles* agreed with the trial court and denied the plaintiff director access to the ballots. *Id.* at 7-8. It held that members of the homeowners' association had a constitutional privacy right in their voting decisions, under the California constitution. *Id.* at 7. It then balanced that constitutional right against the director's "absolute

right" under the California statute to inspect all records and held that his statutory right must yield to the members' constitutional privacy right. *Id.* at 7.

While the reasoning of the California court in ***Chantiles*** is instructive, we decline to adopt it *in toto*. Tennessee citizens, like California citizens, have a right under the respective state constitutions to cast a secret ballot. Moreover, we recognize that "[s]ecrecy after casting a ballot is as essential as secrecy in the act of voting and should also be protected as vigorously." 26 Am. Jur.2d ***Elections*** § 307 (2012). However, we decline to extend the constitutional right to secrecy of the ballot to an election for the board of directors for a condominium association, as was done in ***Chantiles***. ***See Pantelidis***, 2001 Phila. Ct. Com. Pl. LEXIS 113, at *5, 2001 WL 1807912, at *1-2.

We also do not adopt the "balancing" approaching utilized by the California court in ***Chantiles***, in which the members' constitutional right to privacy in voting was balanced against the director's statutory right to access the ballots. Instead, the historic, fundamental right to secrecy of the ballot under the Tennessee Constitution is the backdrop against which we interpret the intent of the legislature in enacting the Tennessee Condominium Act. Our interpretation would no doubt be different if Tennessee's Legislature were to state explicitly that a condominium association must disclose its election ballots. It has not.

For all of these reasons, we do not believe that the Tennessee Legislature would have expected or intended written election ballots to be included in the documents available to condominium unit owners on demand pursuant to Tennessee Code Annotated § 66-27-417. We agree with the holding of the trial court. This holding pretermits all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant Kenneth J. Sigel, M.D., and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

-15-